1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11  DENNIS C. OZENNE,                    )  No. EDCV 05-00114-SS
                                         )
12              Plaintiff,               )
                                         )  **MEMORANDUM DECISION AND ORDER**
13              v.                       )
                                         )
14  JO ANNE B. BARNHART,                 )
    Commissioner of the Social           )
15  Security Administration,             )
                                         )
16              Defendant.               )
    ─────────────────────────────────── )

17

18          Dennis C. Ozenne ("Plaintiff") brings this action seeking to

19  overturn the decision of the Commissioner of the Social Security

20  Administration (hereinafter "Defendant," "Commissioner," or the

21  "Agency") denying his application for Widowers Insurance Benefits.

22  Alternatively, he asks for a remand.  The parties consented, pursuant to

23  28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States

24  Magistrate Judge.  Pursuant to the Court's Case Management Order, the

25  parties filed a joint stipulation ("Jt. Stip.") on March 29, 2006.  For

26  the reasons stated below, the decision of the Commissioner is AFFIRMED.

27  \\

28  \\

# PROCEDURAL HISTORY

Plaintiff was born on April 25, 1947 and was fifty-six years old at the time of the hearing. (Administrative Record ("AR") 36, 65). He completed tenth grade and has past relevant work experience as a fire supplies salesman. (AR 72).

On July 25, 2001, Plaintiff filed an application for Widower's Insurance Benefits ("WIB"). (AR 65-79). He claimed that he became unable to work on April 30, 2000, due to "my back which some days I can't bend over even with daily dose of morphine (which sometimes makes me drowsy). I cannot run – drop foot since operation – haven't returned to normal since last stroke (2 years ago). Seems like more and more I'm losing balance and memory." (AR 71, 78). After the Agency denied his claim initially and upon reconsideration, a hearing was held before Administrative Law Judge ("ALJ") Milan M. Dostal on November 19, 2003. (AR 36, 48, 53). Plaintiff was present and represented by counsel. (AR 39-44). Dr. Alanson A. Mason, an orthopedic surgeon, testified as a medical expert. (AR 42-43). Kelly Winn-Boaitey, a vocational expert, attended the hearing but did not testify. (AR 36-45). On September 15, 2004, ALJ Dostal issued a decision denying benefits. (AR 11-18). Plaintiff sought review of ALJ Dostal's decision before the Appeals Council, which upheld the decision on December 6, 2004. (AR 3). Plaintiff commenced the instant action on February 4, 2005.

\\
\\
\\
\\

2

**FACTUAL BACKGROUND**

**A.   Plaintiff's Medical History**

From 1984 until July 2000, Plaintiff saw Dr. James M. Sandys, a doctor of family medicine with Kaiser Permanente, for diabetes, blood pressure, chronic back pain, and general health.  (AR 73, 156).  In 1988 Plaintiff had a laminectomy of his L4 and L5 vertebrae.  (AR 136).  In addition, Plaintiff was taking morphine, MS Contin, as far back as 1999. (AR 156, 159-60).

In February 1999, Plaintiff's wife died and Plaintiff was referred to the Department of Psychology at Kaiser Permanente.  (AR 161-64).  On March 11, 1999, Rosemary Boardman, a Marriage, Family, and Child Counselor with Kaiser Permanente, diagnosed Plaintiff with depression. (AR 161-64).  From May 1999 through at least June 2001, Plaintiff saw Drs. Susan Kitchen and Daniel Hackett, medical doctors, for depression.[1] (AR 151-52, 165-67).   In addition, Plaintiff took medications for depression from at least January 21, 1999 through March 19, 2001.  (AR 137, 168).

Beginning September 2000, Plaintiff visited Dr. Andy Fujimoto, a doctor of family medicine with Kaiser Permanente, for hypertension, diabetes, chronic back pain, and general health.  (AR 73, 143).  Dr. Fujimoto treated Plaintiff through at least October 14, 2003.  (AR 194).

---

[1]   Plaintiff was very late or did not show up for several appointments in February, March, May, October and November 2000.  (AR 151-52).

3

Dr. Fujimoto continued to treat Plaintiff's chronic back pain with morphine, both MS Contin and Oramorph, and in March 2001 referred Plaintiff to a chronic pain clinic and to physical therapy.[2]  (AR 134-36).  On December 3, 2001, he again referred Plaintiff to physical therapy for treatment of his chronic back pain.  (AR 127).

As a part of his treatment for diabetes, Plaintiff also visited Kaiser Permanente's Department of Optometry, and Dr. J. Fong, a doctor of podiatry with Kaiser Permanente.  (AR 138, 146).

## B.   Consultative Examinations

On August 3, 2001, Plaintiff saw Dr. Howard S. Goldberg for a physical Residual Functional Capacity ("RFC") assessment, which was issued on December 3, 2001.[3]  (AR 187).  Dr. Goldberg considered his examination of Plaintiff and Plaintiff's medical file.  He determined that Plaintiff could lift and/or carry twenty pounds occasionally and

---

[2]  While the record contains numerous references to Plaintiff's medications, and general drug information for Plaintiff's blood pressure, depression, and anxiety prescriptions, there is nothing that suggests Plaintiff actually had any negative reactions or complained of any side effects.  However, on March 26, 2001 Dr. Fujimoto noted that Plaintiff was noncompliant with his medications, and on the March 27, 2001 physical therapy referral form he stated that one goal of the therapy was to reduce Plaintiff's use of pain medication.  (AR 135-36).  On November 30, 2001, Plaintiff visited the emergency room at Kaiser Permanente to get a morphine refill because he had missed his appointment.  (AR 126).  The only other notation was on January 31, 2003, and indicated that Plaintiff "tolerated well" the drug Rocephin, an antibiotic.  (AR 210-11).

[3]  Residual functional capacity is "what [one] can still do despite [her] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

ten pounds frequently, and was otherwise unlimited in his ability to push and/or pull. (AR 181). He found that Plaintiff was capable of standing and/or walking for about six hours of an eight-hour work day and could sit for six hours in an eight-hour work day. (AR 181). He also stated that Plaintiff was limited for less than one-third of the time in his ability to climb, balance, stoop, kneel, crouch, and crawl. (AR 182). In addition, Dr. Goldberg concluded that Plaintiff was unlimited in his ability to feel sensations and to reach in all directions, but was limited in gross and fine manipulation due to a partial claw hand deformity. (AR 183). Finally, Dr. Goldberg determined that Plaintiff does not suffer any visual, communicative, or environmental limitations. (AR 183-84).

On June 17, 2004, Plaintiff saw Dr. Joy Allen, a clinical psychologist, for a consultative psychiatric evaluation.[4] (AR 214-22). Dr. Allen concluded that Plaintiff's ability to understand, remember, and carry out job instructions was within normal limits. (AR 219-22). She also found that he could follow moderately complex instructions, but that his ability to maintain attention, concentration, persistence, and pace was mildly to moderately impaired. (AR 219-22). She determined that Plaintiff's ability to relate to and interact with supervisors, co-workers, and the public was slightly below normal, but that he did not require ongoing supervision or support for basic functioning. (AR 219-22). In addition, Dr. Allen found that Plaintiff's ability to adapt to day-to-day work activities was mildly to moderately impaired, and that

---

[4] Plaintiff missed psychiatric consult exams on November 27, 2001 and September 26, 2002. (AR 177-78, 188).

1   he understood the value of money and was able to manage his own funds.[5]

2   (AR 219-22).  Finally, Dr. Allen determined that Plaintiff had a Global

3   Assessment of Functioning ("GAF") score of 60.[6]  (AR 219).

4

5   **C.  Plaintiff's Testimony**

6

7       On November 19, 2003, a hearing was held before ALJ Milan. D.

8   Dostal.  (AR 36).  At the hearing, Plaintiff testified that he attended

9   a scheduled psychiatric evaluation.  (AR 39).  The testimony and

10  _____

11      [5]  Dr. Allen also filled out a standard worksheet requiring the
    evaluator to check the box corresponding to the appropriate level of
12  limitation, "none," "slight," "moderate," "marked," or "extreme," for
    various abilities.  Dr. Allen checked the boxes for no impairment
13  regarding Plaintiff's ability to understand, remember, and carry out
    short, simple instructions, and his ability to make judgements on simple
14  work-related decisions.  She checked the box for "moderate" limitation
    for his ability to understand, remember, and carry out detailed
15  instructions.  She further noted that Plaintiff had "mild to moderate
    memory problems, particularly with multi-tasking." (AR 221).  Dr. Allen
16  checked that Plaintiff had slight limitations in his ability to interact
    appropriately with the public, supervisors, and co-workers, as well as
17  in his ability to respond appropriately to work pressures in a usual
    work setting and to changes in a routine work setting.  She also stated
18  that he had "mild difficulties relating to and interacting with others."
    (AR 222).  Finally, she noted that Plaintiff had "substance dependence
19  in full sustained remission."  (AR 222).
20
        [6]  A Global Assessment of Functioning score is the clinician's
21  judgment of the individual's overall level of functioning.  It is rated
    with respect only to psychological, social, and occupational
22  functioning, without regard to impairments in functioning due to
    physical or environmental limitations.  See American Psychiatric
23  Association, Diagnostic and Statistical Manual of Mental Disorders, 32
    (4th ed. 2000) (hereafter, "DSM IV").
24
        A rating of 51-60 on the GAF scale indicates "[m]oderate symptoms
25  (e.g., flat affect and circumstantial speech, occasional panic attacks)
    OR moderate difficulty in social, occupational, or school functioning
26  (e.g., few friends, conflicts with peers or co-workers)."  See DSM IV,
    at 34.
27

28

questioning primarily consisted of the ALJ attempting to determine whether or not he had a record of the evaluation.  (AR 39-44).

### D.   <u>Medical Expert's Testimony</u>

Dr. Alanson A. Mason, an orthopedic surgeon, testified at the hearing as a medical expert.  Dr. Mason stated that he had read the medical records and determined that Plaintiff had a severe impairment that affected his residual functional capacity but did not meet or equal a listing.  (AR 42-43).

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for widower's disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[7] and that is expected to  result in death or to last for a continuous period of at least twelve months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

\\

\\

---

[7]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b) – 404.1520(f)(1) & 416.920(b) – 416.920(f)(1).

\\

\\

8

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54 (citing <u>Tackett</u>). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing <u>Tackett</u>). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**THE ALJ'S DECISION**

In his September 15, 2004 decision, ALJ Dostal determined that Plaintiff was the widower of a deceased wage earner, had attained the age of fifty, was unmarried, and was under a disability that began no later than seven years after the wage earner's death or seven years after Plaintiff was last entitled to Survivor's Benefits. (AR 11).

1  The ALJ thoroughly discussed Plaintiffs treatment history and
2  consultative examinations and concluded that Plaintiff was not
3  disabled within the meaning of the Social Security Act.  (AR 13-18).

5      At the first step of the five-step evaluation process, the ALJ
6  concluded that Plaintiff had not engaged in substantial gainful
7  activity since the alleged onset date of disability.  (AR 12).  At the
8  second and third steps, the ALJ determined that Plaintiff suffered
9  from diabetes mellitus and chronic low back pain which were severe but
10 did not meet or equal a listed impairment.  (AR 16).  He found that
11 Plaintiff's depressive disorder was not a severe impairment.  (AR 16).

13     At step four, the ALJ assessed Plaintiff's RFC.  After
14 considering Plaintiff's symptoms and medical source opinions, the ALJ
15 determined that Plaintiff was capable of performing light exertional
16 work.  He found Plaintiff could lift and/or carry up to twenty pounds
17 occasionally, and ten pounds frequently, but that Plaintiff was
18 moderately limited as a result of back pain, mild right hand and wrist
19 deformity, and foot drop.  He further noted that these conditions were
20 "controlled by medications without significant adverse side effects."
21 The ALJ also found that Plaintiff was slightly limited by his
22 depression and anxiety.  (AR 17).  ALJ Dostal then concluded that,
23 based on the definition from the Dictionary of Occupation Titles,
24 Plaintiff could return to his past work as a fire contractor/supplier
25 salesman.  (AR 17).  Accordingly, the ALJ did not reach step five, and
26 he found that Plaintiff was not disabled, as defined in the Social
27 Security Act, at any time through the date of the decision.  (AR 17-
28 18).

1                             **STANDARD OF REVIEW**

2

3          Under 42 U.S.C. § 405(g), a district court may review the

4  Commissioner's decision to deny benefits.  The court may set aside the

5  Commissioner's decision when the ALJ's findings are based on legal

6  error or are not supported by substantial evidence in the record as a

7  whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)

8  (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273,

9  1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th

10  Cir. 1989)).

11

12          "Substantial evidence is more than a scintilla, but less than a

13  preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater,

14  112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which

15  a reasonable person might accept as adequate to support a conclusion."

16  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To

17  determine whether substantial evidence supports a finding, the court

18  must "'consider the record as a whole, weighing both evidence that

19  supports and evidence that detracts from the [Commissioner's]

20  conclusion.'"  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2

21  F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably

22  support either affirming or reversing that conclusion, the court may

23  not substitute its judgment for that of the Commissioner.  Reddick,

24  157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th

25  Cir. 1995)).

26  \\

27  \\

28  \\

                                   11

1                              **DISCUSSION**

2

3    **A.   The ALJ's Failure To Expressly Address The Third Party**

4         **Questionnaire Was Harmless Error Because It Was Cumulative**

5         **Of Plaintiff's Questionnaire**

6

7         Plaintiff asserts that the ALJ erred by failing to address the

8    written comments of Plaintiff's mother-in-law, Marcella Rammacher.

9    (Jt. Stip. at 3).  Ms. Rammacher submitted a Daily Activities

10   Questionnaire dated July 12, 2002.  (AR 100-105).  In the

11   Questionnaire she wrote that on an average day Plaintiff played on his

12   computer, slept, wandered around the store, and watched television.

13   (AR 100, 103).  She stated that he cooked for himself, did his own

14   shopping, paid his own bills, and took care of his own personal

15   hygiene.  (AR 101-102).  She noted, however, that Plaintiff sometimes

16   slept for two to three days at a time and was often late to

17   appointments and family events.  (AR 100, 102).  Ms. Rammacher

18   described Plaintiff as being extremely shy and not having any friends

19   or engaging in any social activities, but she also stated that he was

20   a pleasant and kind person.  (AR 103).  Finally, regarding Plaintiff's

21   ability to concentrate and finish projects, she wrote that he had left

22   frozen food out for too long and forgotten about food past its edible

23   time, had left clothes in the washer for two to three days, had left

24   doors open, had left lights on for twenty-four hour periods, and had

25   taken small appliances apart but was unable to put them back together.

26   (AR 104).

27   \\

28   \\

                                    12

Although an ALJ must give "reasons germane to each witness whose testimony he rejects," Smolen, 80 F.3d at 1288, Ms. Rammacher's written statements are not the equivalent of testimony.  Because she did not testify at the hearing, her allegations as stated in the Questionnaire were not subject to questioning by the ALJ or Plaintiff's counsel.  Furthermore, the Questionnaire was not signed under penalty of perjury and, thus, does not bear the same indicia of reliability a declaration under oath provides.

Moreover, even if the ALJ was required to give specific reasons for rejecting Ms. Rammacher's written statements, a review of her Questionnaire reveals that it was substantively very similar to Plaintiff's Daily Activities Questionnaire and therefore simply cumulative evidence.  Both Plaintiff and Ms. Rammacher wrote that Plaintiff did his own chores, slept often, and on an average day slept, played on his computer, and watched TV.  They both stated that Plaintiff generally got along with others but did not engage in any social activities.  Also, both individuals noted that Plaintiff would sometimes start a project or a chore but would not finish it.  (AR 94-98, 100-05).  In light of the "wide and significant range of daily activities" listed by Plaintiff in his Questionnaire (and similarly described in Ms. Rammacher's questionnaire), the ALJ found Plaintiff's claims of totally disabling mental and physical impairments "less than fully credible."  (AR 16).  Nothing in Ms. Rammacher's questionnaire would have altered the ALJ's conclusions regarding Plaintiff's disability as Ms. Rammacher's statements were very similar to Plaintiff's.  Thus, because Ms. Rammacher's statements were cumulative of Plaintiff's Questionnaire, the ALJ's error, if any, was harmless.

<u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1990) (ALJ's error in a Social Security benefits hearing is harmless where it does not affect the determination) (citing <u>Booz v. Secretary of Health and Human Servs.</u>, 734 F. 2d 1378, 1380-81 (9th Cir. 1984)).

**B.   <u>The ALJ Appropriately Considered the Side Effects of Plaintiff's Medication</u>**

Plaintiff also contends that the ALJ erred by not considering the side effects of morphine on Plaintiff. (Jt. Stip. at 6).  In support of his argument, Plaintiff cites his Disability Report dated July 2, 2001 for the fact that he was prescribed morphine by his treating physician, Dr. Fujimoto. (Jt. Stip. at 6-7).  He then quotes a description of morphine from WebMD.com, "'Morphine is used to relieve severe pain caused by surgery, accident or injury, or chronic illness. . . Morphine causes many side effects, including: Drowsiness; Lightheadedness; Weakness and fatigue; Feelings of elation (euphoria).'  'Morphine impairs balance, coordination, and your ability to think.'" (Jt. Stip. at 7).  Plaintiff, however, does not put forth any evidence of the subjective side effects of morphine on himself.

The "type, dosage, effectiveness, and side effects" of any medication taken by the claimant to alleviate his or her pain or other symptoms are factors relevant to a disability determination and should be considered by the ALJ.  20 C.F.R. § 404.1529(c)(3)(iv); <u>see also</u> Social Security Ruling ("SSR") 96-8p, <u>available at</u>, 1996 WL 374184. However, a claimant bears the burden of proving that an impairment,

14

1  including a medication's side effects, is disabling.  <u>Miller v.</u>
2  <u>Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet
3  burden of proving that an impairment is disabling where he produced no
4  clinical evidence showing that his prescription narcotic use impaired
5  his ability to work); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir.
6  2002) (upholding the ALJ's rejection of the plaintiff's statements
7  that her medications affected her concentration and made her dizzy
8  where no objective evidence was put forth and the ALJ properly found
9  her testimony was generally not credible).  Plaintiff has not met his
10  burden in this case.

11

12      The record does not contain any references to side effects
13  actually caused by Plaintiff's medications.  Plaintiff did not testify
14  at the hearing that morphine affected his ability to work, and his
15  treatment records do not include any such statements.  Rather, the
16  only pertinent remark is in Plaintiff's application for benefits where
17  he parenthetically asserts that morphine "sometimes makes [him]
18  drowsy." (AR 71).  He also submitted general descriptions of Atenolol
19  (blood pressure medication), Lisinopril (blood pressure medication),
20  Bupropion (medication for depression), Alprazolam (medication for
21  anxiety), and Fluoxetine (medication for depression).  (AR 172-76).
22  These descriptions refer to the possible side effects of the
23  medications, however, they do not indicate the actual effects they had
24  on Plaintiff.  Furthermore, a description for morphine was not
25  provided.  Accordingly, Plaintiff has failed to put forth clinical
26  evidence showing morphine affected his ability to sustain employment,
27  and he has, thus, failed to meet his burden of proving that the side
28  effects of morphine were disabling.  <u>See</u> <u>Miller</u>, 770 F.2d at 849

1    (claimant failed to meet burden of proving that an impairment is
2    disabling where he produced no clinical evidence showing that his
3    prescription narcotic use impaired his ability to work).

4

5        Moreover, the ALJ addressed this issue in his decision: "There is
6    no credible evidence that regular usage of strong medication to
7    alleviate symptoms would significantly impair the claimant's ability
8    to do basic work activities.  There was no evidence in the medical
9    record of any significant side effects, such as drowsiness, that could
10   not be alleviated with adjustment and/or changes of medication under
11   careful monitoring."  (AR 15).  Plaintiff failed to offer any evidence
12   to the contrary, such as statements or opinions indicating that he
13   could only rely on morphine for pain treatment.  The ALJ properly
14   considered what little evidence there was in the record of the side
15   effects of morphine impacting Plaintiff's ability to work.  Therefore,
16   remand is not warranted in this case.

17

18                                    **CONCLUSION**

19

20       Consistent with the foregoing, IT IS ORDERED that Judgment be
21   entered AFFIRMING the decision of the Commissioner and dismissing this
22   action with prejudice.  IT IS FURTHER ORDERED that the Clerk of the
23   Court serve copies of this Order and the Judgment herein on counsel for
24   both parties.

25

26   DATED: May 3, 2006.

27                                      _____/s/_____
                                        SUZANNE H. SEGAL
28                                      UNITED STATES MAGISTRATE JUDGE

                                        16